Albert **FARBOTKO;** Aleksandra Farbotko; John Farbotko and a class of similarly situated persons, Plaintiffs and Counter–Defendants,

v.

**CLINTON COUNTY, NEW YORK**
Defendant and Counter–
Claimant,

and William Bingel, in his Official Capacity as Clinton County Administrator, Defendant.

No. 99–CV–1946.

United States District Court,
N.D. New York.

Oct. 11, 2001.

Mark A. Schneider, Plattsburgh, PA, for Plaintiffs.

Maynard, O'Connor, Smith & Catalinotto, Albany, NY (Thomas G. Daley, Robert A. Rausch, of counsel), for defendants.

Phillips, Lytle, Hitchcock, Blaine & Huber LLP, Rochester, NY (Mark J. Moretti, of counsel), Amicus Curiae New York State Association of Counties and County Attorneys Association of the State of New York,

**MEMORANDUM–DECISION AND ORDER**

HOMER, United States Magistrate Judge.

Plaintiffs bring this class action[1] pursuant to 42 U.S.C. § 1983 alleging violations of their civil rights. Specifically, the amended complaint alleges that in 1999, defendants violated their Fourteenth Amendment rights to due process and equal protection in tax foreclosure proceedings. Am. Compl. (Docket No. 8). The amended complaint also alleges pendent state law claims. Plaintiffs seek compensatory damages, declaratory and injunctive relief as well as attorney's fees.

Presently pending is plaintiffs' motion for partial summary judgment pursuant to Fed.R.Civ.P. 56(a). Docket No. 45. Defendants cross-move for summary judgment. Docket No. 49. The New York State Association of Counties and the County Attorneys Association of New York filed an amicus curie brief in support of defendants' cross-motion for summary judgment. Docket No. 64. Oral argument was heard on April 30, 2001. Decision was reserved. For the reasons which follow, plaintiffs' motion for summary judgment is denied and defendants' motion for summary judgment is granted in part and denied in part.

**I. Background**

Prior to 1999, it was Clinton County's past practice to serve notices of tax foreclosure by certified mail. Clinton County Resolution No. 825 permitted delinquent tax payers to redeem their property until the Friday prior to the date of sale at public auction. Rausch Aff. (Docket No. 30) at ¶ 10; Docket No. 28 at Ex. 31. In 1993, New York State amended Article 11 of the Real Property Tax Law. These amendments, effective January 1, 1995, included the authority for municipalities to serve notice of property foreclosures by ordinary first class mail[2] and established a two-year redemption period with an option for municipalities to extend this period to four years for residential or farm properties. *See* N.Y. Real Prop. Tax Law §§ 1110 & 1125 (McKinney 2000). In 1997, Clinton County enacted Local Law No. 5, which extended the redemption period for residential and farm properties from two to four years. Rausch Aff. (Docket No. 50) at Ex. H; Docket No. 28 at Ex. 26.

On October 2, 1998 and January 22, 1999, approximately 525 property owners who were delinquent in paying their taxes for either 1995, 1996 or 1997 were served by ordinary first class mail with "Notices

1. The class was certified as "A class of persons whose real property was taken by Clinton County by a tax foreclosure by the default judgment of August 29, 1999 and whose property was offered for sale at the November 15, 1999 tax sale conducted by Clinton County." Docket No. 35.

2. In 2000, New York State again amended N.Y. Real Prop. Tax Law § 1125 to, require services of notice of property foreclosure to "each owner by certified mail." N.Y. Real Prop. Tax Law § 1125 (McKinney Supp. 2001). The events in question here occurred prior to this amendment.

& Petitions of Foreclosure."[3] *See* Docket No. 28 at Ex. C; Rausch Aff. (Docket No. 50) at Ex. I. These property owners were given until April 26, 1999 to redeem their property.[4] Rausch Aff. (Docket No. 30) at Ex. C. These notices also advised property owners that failure to redeem would result in termination of their rights in their property and that such property would be sold at public auction. *Id.* Clinton County also published copies of tax notices and a list of delinquent tax payers in the local newspapers. Rausch Aff. (Docket No. 50) at ¶ 17. On January 27, 1999, Clinton County enacted Resolution No. 79, which rescinded Resolution No. 825. Resolution No. 79 did not create any new tax foreclosure procedures. Thus, with the exception of Local Law No. 5, Clinton County followed the procedures set forth in Article 11 of the N.Y. Real Prop. Tax Law. Duprey Dep. (Docket No. 50, Ex. C) at 14–15.

Prior to the April 26, 1999 redemption deadline, approximately eighty-one of the 525 notices served by first class mail were returned by the Postal Service to Clinton County marked "undeliverable." Docket No. 28 at Ex. C. Of these eighty-one notices, Janet Duprey ("Duprey"), Clinton County Treasurer, checked for alternate addresses on file with the Clinton County Real Property Tax Office and mailed notices to any different addresses that were located. Duprey Dep. at 38–39.[5] Following the April 26, 1999 redemption deadline, Clinton County permitted seven property owners to redeem their property. *See* Docket No. 28 at Exs. 5–14. These property owners were permitted to redeem due to errors by abstract companies, actual mailing errors and because residential property had been mischaracterized as vacant. *Id.*

On August 26, 1999, Clinton County obtained a default judgment of foreclosure against approximately 203 parcels. Schneider Aff. (Docket No. 27) at ¶ 12; Docket No. 28 at Ex. D. On November 15, 1999, approximately 176 parcels were offered for sale at public auction. Rausch Aff. (Docket No. 30) at ¶ 16. At the sale, plaintiffs Farbotkos and Spinner successfully bid on their property and regained title. Plaintiff Baker's property was sold to his brother, who subsequently transferred title back to Baker. Plaintiff Gooley's property is still owned by Clinton County. *Id.*

## II. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), if the record taken as a whole reveals "no genuine issue as to any material fact ... the moving party is entitled to judgment as a matter of law." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Distasio v. Perkin Elmer Corp.,* 157 F.3d

---

3. It is disputed whether the date of the second set of foreclosure notices were sent on January 22 or 25, 1999. The postmark for the notices is January 22, 1999, thus, that date is used here. Nonetheless, the disputed date is not material to the resolution of these motions.

4. Property owners provided notice on October 2, 1998 originally had until January 16, 1999 to redeem their property. Defendants contend that this deadline was extended to April 26, 1999 by notices sent on March 4, 1999. Plaintiffs contest such mailing and contend that defendants failed to proffer any proof of such mailing despite their discovery requests. Defendants, however, have provided copies of the envelopes sent as well as a copy of the contents of the mailing.

5. Plaintiffs dispute this contention because defendants failed to provide proof of this remailing. Defendants, however, have proffered copies of envelopes as proof of remailings to delinquent taxpayers in which different addresses were located in the Real Property Tax Office. Rausch Aff. (Docket No. 58) at Ex. A.

55, 61 (1998). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir.1994); *see also Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). Once the moving party has provided sufficient evidence to support a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e); *accord Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir.1994). The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *American Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir.1994); *see also Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985).

### III. Due Process

■ To state a claim for a violation of due process, a plaintiff must allege that he or she was deprived of life, liberty or property without notice and an opportunity to be heard. *See Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314, 70 S.Ct. 652; *see also Mennonite*, 462 U.S. at 795, 103 S.Ct. 2706. Opportunity requires a "hearing appropriate to the nature of the

case." *Id.* at 313, 70 S.Ct. 652. Here, plaintiffs contend that Title III of the N.Y. Real Property Tax Law as well as Clinton County's 1999 tax foreclosure proceedings violated due process.

### A. Constitutionality of Title III

Plaintiffs contend that Title III failed to provide for proper notice of foreclosure proceedings under all circumstances. Plaintiffs further contend that the default judgment provisions of Title III failed to provide notice of the entry of default judgments, impermissibly shortened the period for vacating default judgments and failed to provide for a redemption period after the entry of default judgments.[6] Am. Compl. at ¶ 119.

### 1. Notice

■ As a general rule, notice sent by ordinary mail satisfies due process requirements. *Mennonite*, 462 U.S. at 800, 103 S.Ct. 2706; *Mullane*, 339 U.S. at 319, 70 S.Ct. 652; *Weigner v. City of New York*, 852 F.2d 646, 650 (2d Cir.1988). Indeed, ordinary mail is "an 'efficient and inexpensive means of communication' that generally may be relied upon to deliver notice where it is sent." *Weigner*, 852 F.2d at 650 (quoting *Mullane*, 339 U.S. at 319, 70 S.Ct. 652). Here, Title III required notices of foreclosure to be sent by ordinary first class mail to property owners and any other person with an interest in the property. N.Y. Real Prop. Tax Law § 1125(1). This personal notice was also supplemented by procedures for both newspaper publications and posting in the enforcing officer's office as well as in the county courthouse. *Id.* at §§ 1124(1), (3).

---

6. Plaintiffs also contend that Title III is unconstitutional because it permitted municipalities to retain the surplus from tax auction sales. Specifically, plaintiffs contend that permitting municipalities to retain such surpluses created an incentive for municipalities to violate due process. This contention does not involve the due process requirements of notice and an opportunity to be heard. Therefore, plaintiffs' contention is rejected.

■ Plaintiffs contend that these provisions violated due process because they failed to provide sufficient notice under all circumstances. For example, there were no specific provisions for municipalities to provide heightened notice to known incompetents. The Second Circuit has recognized that "mailed notice may be inadequate ... where the recipient is known to be someone who could not understand mailed notice." *Weigner*, 852 F.2d at 650 n. 4 (citing *Covey v. Town of Somers*, 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956)). Nonetheless, Title III does not "preclude the enforcing officer from issuing, at his or her discretion, ... notice ... through means other than first class mail, including but not limited to personal service, [or] registered or certified mail...." N.Y. Real Prop. Tax Law § 1125(4)(a). Thus, under special circumstances where due process may require heightened forms of notice, Title III authorizes the enforcing officer to provide personal notice by means other than first class mail. Therefore, title III was not unconstitutional on this ground.

■ Plaintiffs also contend that Title III violates due process because it did not contain a procedure for notifying property owners that were unable to receive mail or to send notices to all known addresses. Due process, however, imposes a reasonableness standard and "does not mean that all risk of non-receipt must be eliminated." *Weigner*, 852 F.2d at 649. Under Title III, personal notice by first class mail was supplemented by publication and posting. N.Y. Real Prop. Tax Law §§ 1124(1), (3). Therefore, the provisions, as written, had a procedure for notifying property owners that were unable to receive mail. *See Weigner*, 852 F.2d at 651 ("Particularly where mailing is supplemented by other forms of notice such as posting or publication, the risk of non-receipt is constitution-

ally acceptable."). Further, Title III required personal notice to be sent to the addresses that were "reasonably ascertainable from the public record." N.Y. Real Prop. Tax Law § 1125(1). This is all that due process requires. *See Schroeder v. City of New York*, 371 U.S. 208, 212–13, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962).

In essence, then, plaintiffs' arguments here appear to contend that Title III was unconstitutional as written because it failed to provide actual notice under all possibly foreseeable consequences. However, "practical considerations [ ] make it impossible to draw a standard set of specifications as to what is constitutionally adequate notice, to be mechanically applied in every situation." *Id.* at 212, 83 S.Ct. 279. The proper inquiry, therefore, is not whether Title III provided for actual notice under all circumstances but whether it was a reasonable means likely to inform affected property owners. "As long as the state employs means 'such as one desirous of actually informing the [property owner] might reasonably adopt to accomplish [that purpose],' then it has discharged its burden." *Weigner*, 852 F.2d at 649 (quoting *Mullane*, 339 U.S. at 315, 70 S.Ct. 652). Title III provided for notice by first class mail, publication and posting under normal circumstances. Title III also vested appropriate discretion in the enforcing officer to use other means of notice when warranted under special circumstances. "'Now and then an extraordinary case may turn up,'" but Title III, as written, was a reasonable method of notifying property owners of foreclosure proceedings, "'and in the great majority of instances no doubt justice will be done.'" *Mullane*, 339 U.S. at 319, 70 S.Ct. 652 (quoting *Blinn v. Nelson*, 222 U.S. 1, 7, 32 S.Ct. 1, 56 L.Ed. 65 (1911)).

The notice provisions of Title III thus satisfied the requirements of due process.

## 2. Default Judgment

■ N.Y. Real Prop. Tax Law § 1131 states in pertinent part:

"In the event of a failure to redeem or answer by any person having the right to redeem or answer, such person shall forever be barred and foreclosed of all right, title, and interest ... to the parcel ... and a judgment in foreclosure may be taken by default.... A motion to reopen any such default may not be brought later than one month after entry of the judgment." Plaintiffs contend that section 1131 violates due process because it 1) does not require notice or service of entry of default judgments; 2) impermissibly shortens the period for vacating default judgments; and 3) fails to provide for a redemption period after entry of default judgments. "However, due process only requires notice of 'the pendency of the action' and an opportunity to respond".

*Weigner*, 852 F.2d at 652 (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. 652; *Mennonite*, 462 U.S. at 795, 103 S.Ct. 2706; and *Greene v. Lindsey*, 456 U.S. 444, 451, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982)). Since Title III provided constitutional notice of the pendency of the foreclosure proceedings and adequately apprises affected landowners of their rights, due process does not require municipalities "to send additional notices as each step in the foreclosure proceedings [is] completed...." *Id.* (citations omitted).

■ Furthermore, delinquent taxpayers were provided a two to four year redemption period prior to the commencement of foreclosure proceedings. *See* N.Y. Real Prop. Tax Law § 1110. Once foreclosure proceedings began, Clinton County provided an additional ninety days from the date of the notice to respond by either appearing and answering or paying the back taxes. *See id.* at §§ 1123(6)-(8); Duprey Dep. at 19. In light of "[t]he well-known inevitability of taxes and the consequences of not paying them, this time period provides delinquent taxpayers ample opportunity to respond." *Weigner*, 852 F.2d at 651. Moreover, state tax laws take precedence over state procedural rules. *See id.* at 652–53 (collecting cases). Thus, the one month period to vacate default judgments specifically provided for in section 1131 superceded the one year period set forth in N.Y. C.P.L.R. 5015 (McKinney 1992).[7]

Therefore, Title III is constitutional on its face. Plaintiffs' motion for summary judgment on this ground is denied and defendants' motion for summary judgment on this ground is granted.

## B. Constitutionality of Clinton County's 1999 Tax Foreclosure Proceedings

Alternatively, plaintiffs contend that Clinton County's 1999 tax foreclosure proceedings violated due process and state law. Specifically, plaintiffs contend that Clinton County 1) did not follow general office procedures in sending the mass mailing or use due diligence to ascertain correct mailing addresses; 2) improperly sent notices in small type; 3) did not have a procedure in place for providing adequate notice to incompetent recipients; 4) failed to give residential property owners four years to redeem; 5) denied property owners their vested right to redeem until the Friday before the tax auction sale; and 6) acted in bad faith.[8]

---

7. Plaintiffs also allege that defendants violated state law by failing to serve the default judgment. For the same reasons, that claim lacks merit.

8. Plaintiffs also contend that this Court should vacate the state court's entry of default judgments because Duprey's affidavit submitted in support of the judgments was neither notarized nor signed under penalty of perjury.

## 1. Sufficiency of Mailing

■ As discussed in greater detail in section III(A) *supra*, notice sent by ordinary mail generally satisfied due process. *See Mennonite*, 462 U.S. at 800, 103 S.Ct. 2706; *Mullane*, 339 U.S. at 319, 70 S.Ct. 652; *Weigner*, 852 F.2d at 650. Where the enforcing officer proffers evidence that the notices were properly addressed and mailed to the interested parties in accordance with regular office procedures, the municipality is entitled to the presumption that the notice was received. *See Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2d Cir.1985); *Sendel v. Diskin*, 277 A.D.2d 757, 716 N.Y.S.2d 471, 473 (3d Dep't 2000) (citing N.Y. Real Prop. Tax Law §§ 1125(1), 1134, 1137); *Law v. Benedict*, 197 A.D.2d 808, 603 N.Y.S.2d 75, 77 (3d Dep't 1993) (citations omitted); *Best v. City of Rochester*, 195 A.D.2d 1073, 600 N.Y.S.2d 405, 405 (4th Dep't 1993). This presumption may not be rebutted by a mere denial of receipt. *Meckel*, 758 F.2d at 817; *Sendel*, 716 N.Y.S.2d at 473 (citations omitted); *Law*, 603 N.Y.S.2d at 77. Furthermore, any technical deficiency in the mailing is excused where the property owner received actual notice. *Law*, 603 N.Y.S.2d at 77. Rebuttal of the presumption requires a "specific factual denial of receipt." *Nunley v. City of Los Angeles*, 52 F.3d 792, 796 (9th Cir.1995); *see also Bourgal v. Robco Contracting Enterprises, Ltd.*, 17 F.Supp.2d 129, 132 (E.D.N.Y. 1998).

Here, Duprey submitted an affidavit detailing the procedures followed to execute the mailings of the notices of foreclosure. Duprey Aff. (Docket No. 50) at ¶ 6. Thus, defendants are entitled to the presumption that the notices were received. *See, e.g., Best*, 600 N.Y.S.2d at 405. Nonetheless, plaintiffs and potential class members have provided their own affidavits attesting that they had filed correct mailing addresses with either Clinton County or their towns but that their notices were mailed elsewhere. For example, plaintiff Baker affirms that when he moved to Gansevoort, New York in 1995, he notified Clinton County and the Town of Ausable of his change of address. Baker Aff. (Docket No. 28, Ex. H) at ¶ 5. Potential class member Hunt proffers a letter to Duprey dated January 15, 1998 informing Duprey of his change of address. Hunt Aff. (Docket No. 46, Ex. A1), attach. Potential class member Lamberti also provides other correspondence sent to him from Clinton County at his correct address. Lamberti Aff. (Docket No. 46, Ex. A2), attach.

■ Other evidence offered by plaintiffs raise questions concerning the presumption of regularity and receipt of the mailings and, therefore, of the sufficiency of the notice. The record demonstrates that other delinquent taxpayers were able to redeem either after the April 26, 1999 deadline or the November 15, 2000 tax auction because of irregularities in the mailing of their notices of foreclosure. *See* Docket No. 28 at Exs. 5–13. Second, there is evidence that the notices were postmarked three days prior to the January 25, 1999 signature on the notices, further demonstrating irregularities in executing the mailings. Third, the procedures followed by defendants when approximately eighty-one notices were returned to Clinton County marked "undeliverable" also undermines the presumption. Docket No. 28 at Ex. C. Where a municipality knows that the notice did not "reach[ ] its destination," it is obligated to "take steps … to effectuate delivery of the notice." *Torres*

Notions of federalism and comity, however, prevent this Court from second guessing the state court's determination. Accordingly, plaintiffs' motion for summary judgment on this ground is denied and defendants' motion for summary judgment is granted.

v. *$36,256.80 U.S. Currency,* 25 F.3d 1154, 1161 (2d Cir.1994); *see also Robinson v. Hanrahan,* 409 U.S. 38, 39, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972) (where the government is aware that an interested party does not reside at the address, but relies only on notice sent to that address, such notice is not reasonably calculated under the circumstances); *Weigner,* 852 F.2d at 650 n. 4 ("where the state knows that an interested party does not reside at the mailing address ..., then due process may require more than sending a letter to the address on file"). Under these circumstances, a municipality is required to use "due diligence" to ascertain the addresses of property owners. *See Mullane,* 339 U.S. at 317, 70 S.Ct. 652; *see also* N.Y. Real Prop. Tax Law § 1125(1); *Mennonite,* 462 U.S. at 798 n. 4, 103 S.Ct. 2706.

 As to the eighty-one returned notices, Duprey testified at her deposition that when the notices were returned, she checked for alternate addresses on file with the Real Property Tax Office. Duprey Dep. at 38–39. The record demonstrates that approximately seven notices were remailed to alternate addresses. Rausch Aff. (Docket No. 58) at Ex. A. Plaintiffs contend that Duprey was obligated to search voting records, motor vehicle records and the telephone book to ascertain correct mailing addresses. A municipality, however, is not "required to undertake extraordinary efforts to discover the ... whereabouts of a [property owner]." *Mennonite,* 462 U.S. at 798 n. 4, 103 S.Ct. 2706. Property owners are charged with the knowledge that taxes are regularly due and municipalities are entitled to rely on the information contained in its own records. *Girrbach v. Levine,* 132 A.D.2d 41, 522 N.Y.S.2d 276, 277–78 (3d Dep't 1987) (citations omitted). Therefore, Duprey was not obligated to search voting records, motor vehicle records or the telephone

book to obtain alternate mailing addresses. However, Duprey is charged with the knowledge of addresses which were "reasonably ascertainable from the public record. ..." N.Y. Real Prop. Tax Law § 1125(1); *see also Olivo v. United States,* No. 96 Civ. 2620, 1997 WL 23181, at *4 (S.D.N.Y. Jan. 22, 1997) ("courts have not hesitated to find that where the first attempted notice is unsuccessful, but a person's correct address can be obtained by the government through minimal effort, the failure to attempt a second notice violates due process") (citations omitted). This required Duprey at least to "avail [herself] of information in [her] own records. ..." *Vilca v. Village of Port Chester,* 255 A.D.2d 593, 681 N.Y.S.2d 291, 292 (2d Dep't 1998).

 Under New York law, counties and towns have "interrelated functions and responsibilities with respect to the assessment, collection and enforcement of real property taxes among the[ir] agencies, with a constant flow of relevant tax data and directives back and forth." *Tobia v. Town of Rockland,* 106 A.D.2d 827, 484 N.Y.S.2d 226, 229 (3d Dep't 1984); *but see Keiser v. Young,* 181 A.D.2d 170, 585 N.Y.S.2d 880, 883 (3d Dep't 1992) (county and village are separate taxing authorities and maintain separate assessment and tax rolls). In fact, town tax rolls are located in the Clinton County Government Center. Bingel Dep. (Docket No. 50, Ex. D) at 29. Plaintiffs Baker and Gooley as well as potential class members Hunt and Lamberti have affirmed that they had filed changes of address with either the County or their town. *See* Baker Aff. at ¶ 5; Gooley Aff. (Docket No. 28, Ex. I) at ¶ 11; Hunt Aff., ¶¶ 3 & 5; Lamberti Aff. at ¶ 6. Duprey concedes that she did not check for alternate addresses in the town tax records. Furthermore, it is likely that property owners would file a change of

address with the town, but not with the county. *See Bender v. City of Rochester,* 765 F.2d 7, 11 (2d Cir.1985) ("the initial determination of what due process imposes must take into account what the interested party ... is likely to do"). Thus, Duprey was obligated to check for alternate addresses on the town tax rolls.

Moreover, plaintiff Spinner affirms that she had received prior years' tax bills at her permanent address at 107 Emmons Street, Dannemora, New York. Spinner Aff. (Docket No. 28, Ex. G) at ¶ 10. In 1999, Clinton County mailed the notice of foreclosure to Spinner at her temporary address in Morrisonville, New York. *See id.* at attach. Spinner affirms that she never filed a change of address with Clinton County. *Id.* at ¶ 6. Thus, there is a question of fact whether Clinton County knew Spinner's name and address at 107 Emmons Street. *See McCann v. Scaduto,* 71 N.Y.2d 164, 524 N.Y.S.2d 398, 403, 519 N.E.2d 309 (N.Y.1987) (where owner's name and address are known, government must send notice to that address).

■ Thus, as to those plaintiffs and potential class members who present such evidence, plaintiffs have offered evidence which, if credited, would rebut the presumption of receipt upon which defendants rely to establish notice. It does not follow, however, that plaintiffs are thereby entitled to summary judgment themselves. There remains questions of fact and credibility at least regarding 1) the office procedures followed in executing the mass mailing of the notices of foreclosure; 2) whether plaintiffs or potential class members had alternate addresses filed with their towns; and 3) whether plaintiffs or potential class members had actual notice of the tax foreclosure proceedings. *Cf. 380 Front Street No. 20 Corp. v. County of Dutchess,* 264 A.D.2d 739, 694 N.Y.S.2d

748, 749 (N.Y.A.D.2d Dep't 1999) (collecting cases).

Accordingly, both plaintiffs' and defendants' motions for summary judgment on this ground are denied.

**2. Size of Type**

Plaintiffs contend that the tax foreclosure notices violated due process and state law because their contents were printed in six-point type and the property owners' names were not alphabetized. Due process requires that the content of the "notice should describe the action and the [property owner's] rights in it." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *see also Mullane,* 339 U.S. at 314, 70 S.Ct. 652. Nonetheless, the content of the notice should be analyzed under a "flexible standard" based upon the "particular situation." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *see also In re Drexel Burnham Lambert Group,* 995 F.2d 1138, 1144 (2d Cir.1993).

■ Here, the record demonstrates that the notice of foreclosure was printed in at least ten-point type. *See* Rausch Aff. (Docket No. 50) at Ex. I. Attached to the notices were nineteen computer generated lists identifying the parcel of property subjected to foreclosure, the names of the property owners and the amount of taxes owed. *See* Docket No. 28 at Ex. A. While the size of the type used in these computer generated attachments was small, it is legible. Thus, the size of the type does not violate due process. *See, e.g., Setlech v. United States,* 816 F.Supp. 161, 164 (E.D.N.Y.1993) (no due process violation where "[p]laintiff's loans, identified by name, social security number and amount were included on the computer generated list attached to the [ ] letter"). Further, the property owners' names were not alphabetized, but the notice was personally

addressed to the recipient and the notice's content adequately informed the recipient that his or her property was subject to foreclosure.

 Moreover, plaintiffs contend that the attachment violated N.Y. C.P.L R. 2101(a), which requires all legal papers, except summonses and exhibits, to "be in clear type of no less than ten-point in size." Nonetheless, Rule 2101(f) authorizes a court to disregard a defect in the form of a legal paper "if a substantial right of a party is not prejudiced." Assuming *arguendo* that the attachments were defective, plaintiffs have not demonstrated prejudice. Furthermore, Rule 2101(f) requires the papers' recipients to object to the defect within two days of receipt. Failure to object is deemed a waiver of any objection to the papers' form. There is no evidence in the record here that any property owner inquired into or complained of the attachments. Therefore, plaintiffs have waived any objection to the attachments' form.

Accordingly, plaintiffs' motion for summary judgment on this ground is denied and defendants' motion for summary judgment here is granted.

### 3. Incompetent Recipients

 Plaintiffs contend that Clinton County's 1999 tax foreclosure proceedings violated due process because the County had no procedure for providing adequate notice to incompetent property owners. It is well settled that municipalities cannot rely on notice sent by first class mail to known unprotected incompetents or other persons known to be unable to understand the notice's content. *See Covey v. Town of Somers*, 351 U.S. 141, 147, 76 S.Ct. 724, 100 L.Ed. 1021 (1956). The record here demonstrates that Clinton County has a third party notification procedure. Duprey Dep. at 48–49. This procedure allows the County to notify either children or another appropriate third party of a property owner "who for valid reason[s ] feel they should be notified" that property taxes have not been paid. *Id.* at 49. This program is noted on the back of each year's tax bill. *Id.* Therefore, plaintiffs' contention that Clinton County did not have a procedure to provide adequate notice to incompetent property owners lacks merit.

 The Farbotko plaintiffs also contend that Clinton County Clerk John H. Zurlo ("Zurlo") knew Albert Farbotko was incompetent and did not speak English. Thus, according to plaintiffs, Clinton County was required to send the Farbotkos notice of the foreclosure by certified mail. Zurlo, however, stated that he did not know Albert Farbotko personally or that he was incompetent. Zurlo Dep. (Docket No. 50, Ex. E) at 8–9. Furthermore, the Supreme Court's decision in *Covey* was concerned with a property owner who "had no relative in the State of New York or any other person present or available to assist her or to act in her behalf in connection with her taxes...." 351 U.S. at 146, 76 S.Ct. 724. Here, Albert Farbotko's adult son, plaintiff John Farbotko, visited him every day. *See* Am Compl. at ¶ 36. Since Clinton County had a procedure permitting John Farbotko to receive notice of unpaid property taxes and since there is no issue of fact that Zurlo did not know that Albert Farbotko was incompetent or did not speak English, notification by first-class mail was sufficient.

Accordingly, plaintiffs' motion for summary judgment on this ground is denied and defendants' motion for summary judgment here is granted.

### 4. Redemption Period for Residential Property

N.Y. Real Prop. Tax Law § 1111(2) permits municipalities to extend the re-

demption period for residential and farm property from two to four years. The redemption period for vacant or commercial property is two years. *See* N.Y. Real Prop. Tax Law § 1110(2). Clinton County Local Law No. 5 formally adopted this four year redemption period in 1995. Plaintiffs contend that property subjected to the 1999 Clinton County tax foreclosure was improperly listed as vacant and residential property owners were not afforded the four year redemption period.

For example, the Farbotkos contend that their residential property was improperly listed as vacant. The Farbotkos purchased lake front property in Rouses Point, New York in the 1950's. Schneider Aff. (Docket No. 46) at ¶ 27. The Farbotkos built a summer home and continued to reside on the property as one undivided lot until 1990. *Id.* In 1990, the Farbotkos sold the portion of the property containing the summer home and one-half of the land to their son, plaintiff John Farbotko. *Id.* at ¶ 28. The portion of the property retained by the Farbotkos included such improvements as a driveway and wooden outbuildings. *Id.* The Farbotkos were delinquent in paying their 1997 taxes on this lot. Am. Comp. at ¶ 23. The Farbotkos contend, however, that the improvements on their property required Clinton County to classify it as residential. Thus, the Farbotkos claim that they were entitled until 2001 to redeem their 1995 back taxes.

■ N.Y. Real Prop. Tax Law § 1111(1)(b) provides in pertinent part: " 'Residential property' means property which is improved by a one, two or three family structure used exclusively for residential purposes...." The Farbotkos do not reside in the outbuildings located on their Rouses Point property. Furthermore, the driveway is not an improvement included in section 1111(1)(b) entitling the property to residential status. The mere

fact that John Farbotko used these improvements in conjunction with his adjacent residential property is unavailing. Since 1990, the property has been two lots with two separate owners. The two lots have also been taxed separately. The Farbotkos were delinquent in their taxes and Clinton County was entitled to foreclose.

Accordingly, plaintiffs' motion for summary judgment on this ground is denied and defendants' motion here is granted.

**5. Vested Right to Redeem**

Pursuant to Clinton County Resolution No. 825, delinquent taxpayers were permitted to redeem their property until the Friday before the tax foreclosure auction. Rausch Aff. (Docket No. 30) at ¶ 10. On January 27, 1999, Clinton County enacted Resolution No. 79, which rescinded Resolution No. 825. Docket No. 28 at Ex. B. The effect of Resolution No. 79 was that the final date of redemption was no longer the Friday prior to the auction but the date set by the notice of foreclosure. *See* Duprey Dep. at 14–15. In 1999, the redemption deadline was set at April 26, 1999 and property owners were provided ninety days from the mailing of the notices to redeem their property. Rausch Aff. (Docket No. 50) at Ex. I. Clinton County, however, sent the notices of foreclosure on January 22, 1999, five days prior to the enactment of Resolution No. 79. Plaintiffs thus contend that they had a vested right to redeem their property up until the Friday before the November 1999 tax auction in accordance with the resolution in effect on the date the notices were mailed.

■ Defendants contend that Resolution No. 825 was rescinded by operation of the 1993 amendments to the N.Y. Real Prop. Tax Law, which became effective January 1, 1995. Therefore, the enactment of Resolution No. 79 is irrelevant in determining the rights of delinquent tax-

payers. N.Y. Real Prop. Tax Law applies "to all counties ... and shall supercede any inconsistent general, special or local law...." N.Y. Real Prop. Tax Law § 1104(1). The statute, however, does not prohibit counties from setting the expiration of the redemption period at the Friday before the tax foreclosure auction. *See* N.Y. Real Prop. Tax Law § 1110(1). Thus, Resolution No. 825 was not inconsistent with or repealed by N.Y. Real Prop. Tax Law. Therefore, defendants' contention lacks merit.

■ Nonetheless, Resolution No. 825 required tax auction sales to be conducted on the fourth Monday in March. *See* Duprey Dep., attach. 31. Prior to 1999, the delinquent taxpayers had until the middle of March to pay their taxes. *Id.* In 1999, delinquent taxpayers were permitted to redeem their property until April 26, 1999. Thus, property owners were provided additional time to redeem in 1999 than in previous years. Assuming *arguendo* plaintiffs had a vested right under Resolution No. 825, this additional one month to redeem did not violate such right.

Plaintiffs also contend that a March 4, 1999 newspaper article in the *Plattsburgh Press–Republican* misinformed property owners that they had until the Friday before the tax auction to redeem their property. Docket No. 28 at Ex. 18. The March 4th newspaper article, however, involved 1995 delinquent taxpayers who were originally mailed notices on October 2, 1998 that they had until January 16, 1999 to redeem their property. *Id.* Apparently, property owners attempted to redeem after January 16th and Duprey refused payment. *Id.* Clinton County subsequently decided to have one tax auction and on March 4, 1999, Duprey learned

that the January 16, 1999 deadline could be extended. *Id.* The property owners originally sent notice of the January 16, 1999 deadline were informed of the extension to April 26, 1999 by notices mailed March 4, 1999. Rausch Aff. (Docket No. 58) at Ex. A. The newspaper article did not state that the deadline for redemption was the Friday prior to the tax auction. Docket No. 28 at Ex. 18. Thus, plaintiffs' reliance on the March 4, 1999 newspaper article is misplaced.

Accordingly, plaintiffs' motion for summary judgment on this ground is denied and defendants' motion for summary judgment on this ground is granted.

### 6. Bad Faith

■ Plaintiffs contend that the 1999 tax foreclosure proceedings should be declared unconstitutional because the defendants acted in bad faith. "The [Supreme] Court has read an implicit bad faith standard into the notice inquiry, overturning notice even where the formal procedures were followed if the notifying party knew or had reason to know that notice would be ineffective." *Sarit v. D.E.A.*, 987 F.2d 10, 14 (1st Cir.1993) (citing *Robinson v. Hanrahan*, 409 U.S. at 39, 93 S.Ct. 30, and *Covey*, 351 U.S. at 141, 76 S.Ct. 724). This bad faith inquiry considers whether the municipality "knew at the time the notice was sent that the notice was likely to be ineffective." *Id.* at 15. Here, plaintiffs contend that bad faith is established by defendants' misrepresentations in the media and by the increase in revenue from the 1999 tax auction.[9] As discussed in section III(B)(5) *supra*, the March 4, 1999 newspaper article was not a misrepresentation. Furthermore, the increased reve-

---

**9.** The sale resulted in a net gain for Clinton County of approximately $255,000. Duprey Dep. at 35. Its net gain the previous five years had not exceeded $100,000. Docket No. 29 at Ex. F.

nue in 1999 was due to the increase number of properties foreclosed upon and not the procedures followed.

Accordingly, plaintiffs' motion for summary judgment on this ground is denied and defendants' motion for summary judgment is granted.

### IV. Equal Protection

██ The Equal Protection Clause of the Fourteenth Amendment is designed to ensure that all similarly situated persons are treated alike. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Disabled Am. Veterans v. U.S. Dep't of Veterans Affairs*, 962 F.2d 136, 141 (2d Cir.1992). Where a statute classifies persons, it is susceptible to an equal protection challenge under various levels of judicial review. *See Cleburne*, 473 U.S. at 433–34, 440, 441, 105 S.Ct. 3249 (three levels of review under equal protection are strict scrutiny, intermediate scrutiny and rational basis review). Here, Clinton County's 1999 tax foreclosure proceedings set an April 29, 1999 redemption deadline for all delinquent taxpayers. Plaintiffs, however, claim that defendants did not enforce this deadline equally.

██ In fact, seven delinquent taxpayers were permitted to redeem after the April 26, 1999 deadline. Docket No. 28 at, Exs. 5–13. Plaintiffs' claim for a violation of equal protection is properly considered as a claim based upon selective enforcement. *See Latrieste Rest. v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir.1999); *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir.1999). To state a claim of selective enforcement, each plaintiff must demonstrate that 1) he or she was disparately treated as compared to other similarly situated persons, and 2) the disparate treatment was motivated by impermissible considerations such as race or religion, by an intent to suppress or

punish plaintiffs' exercise of a constitutional right or by a malicious intent to injure plaintiffs. *See Latrieste Rest.*, 188 F.3d at 69; *Lisa's Party*, 185 F.3d at 16.

██ Each plaintiff must demonstrate that he or she was disparately treated in his or her attempt to redeem property after the deadline. The only identified delinquent taxpayers who attempted·to redeem after the April 26, 1999 deadline are Spinner, Baker and the Farbotkos. As to them, the "key" inquiry is whether Clinton County's refusal to permit these taxpayers to redeem after the April 26, 1999 deadline was based upon an impermissible motive. *See Latrieste*, 188 F.3d at 69. The record demonstrates that mistakes were made by Clinton County in mailing notices to the correct addresses and in classifying property as either residential or vacant. Further, Clinton County's implementation of state and local amendments to the tax foreclosure procedures clearly caused confusion among County officials. Nonetheless, these plaintiffs do not allege, and the record does not demonstrate, that plaintiffs were denied the right to redeem based upon an improper motive such as race or a malicious intent to injure.

Accordingly, plaintiffs' motion for summary judgment on this ground is denied and defendants' motion for summary judgment on this ground is granted.

### V. Damages

██ Defendants' alternatively move for summary judgment on plaintiffs' claims for punitive damages and attorney's fees. An award of punitive damages is appropriate only when "the defendant's ˙violation of federal law was intentional, or 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of other.'" *McCardle v. Haddad*, 131 F.3d 43, 52–53

(2d Cir.1997) (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)) (internal citation omitted). As discussed in greater detail in sections III(B)(6) and IV *supra*, the record does not demonstrate any malicious or wanton conduct by defendants. Therefore, punitive damages are not appropriate in this action and defendants' motion for summary judgment on this ground is granted.

Under 42 U.S.C. § 1988, a court may award attorney's fees to a "prevailing party" in a section 1983 action. Section 1988 "must be applied broadly to achieve its remedial purposes." *Mid–Hudson Legal Servs. v. G & U*, 578 F.2d 34, 37 (2d Cir.1978); *see also Haley v. Pataki*, 106 F.3d 478, 481 (2d Cir.1997). Defendants contend that plaintiffs could only be awarded attorney's fees if this Court declares the N.Y. Real Prop. Tax Law unconstitutional. Plaintiffs claim that defendants' mass mailing of the notices of foreclosure were constitutionally deficient, however, still survives. Thus, it is still undetermined whether plaintiffs are a prevailing party. *See Dillenbeck v. Hayes*, 830 F.Supp. 673, 674 (N.D.N.Y.1993) (plaintiff is a prevailing party if he or she "succeed[ed] on [ ] significant issue[s] in [the] litigation which achieve some of the benefit[s ] sought in bringing suit") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Therefore, defendants' motion for summary judgment on this ground is denied.

## VI. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that

1. Plaintiffs' motion for summary judgment is **DENIED** in its entirety;

2. Defendants' motion for summary judgment is:

A. **DENIED** as to plaintiffs' claim that the mailings of the notices of foreclosure violated the notice requirement of due process;

B. **DENIED** as to plaintiffs' claim for an award of attorney's fees; and

C. **GRANTED** in all other respects.

**IT IS SO ORDERED.**