**PLATTEVILLE AREA APARTMENT ASSOCIATION, et al., Plaintiffs–Appellants, Cross–Appellees,**

v.

**CITY OF PLATTEVILLE, Defendant–Appellee, Cross–Appellant.**

**Nos. 98–3070, 98–3148.**

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1999.

Decided June 18, 1999.

John J. McDermott (argued), Jackson & Campbell, Washington, DC, Julie Enloe, Waterford, WI, for Plaintiff–Appellants in 98–3070.

Bradley D. Armstrong, Guy J. Du Beau, Axley Brynelson, Madison, WI, for Defendant–Appellee in 98–3070.

John J. McDermott (argued), Jackson & Campbell, Washington, DC, for Plaintiff–Appellees in 98–3148.

Bradley D. Armstrong, Axley Brynelson, Madison, WI, for Defendant–Appellant in 98–3148.

Before POSNER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

Owners and tenants of rental housing in the City of Platteville, Wisconsin, brought this suit in federal district court to enjoin, primarily as a violation of the Fourth Amendment, the enforcement of a city ordinance that authorizes periodic searches of rental housing to determine compliance with the city's housing code. The district court gave the plaintiffs some of the relief they sought but not all, and both sides have appealed. The principal issue concerns the propriety of searching for violations not only of the health and safety provisions of the code, but also of the limits that the code places on multiple occupancy of a single dwelling unit.

Platteville is a college town that several years ago became concerned about the deterioration of its rental housing stock. The deterioration was believed to be caused by landlords' neglect of health and safety regulations. Their neglect was thought in turn due to the ineffectiveness of the procedure for enforcing the regulations. It required a complaint, and tenants rarely complained, either because they feared retaliation by their landlord or because they were unaware of the code violations that existed (no doubt they were usually unaware of the code's contents). To deal with the problem, the City in 1997 promulgated two ordinances that amended chapter 23 of the housing code. Ordinance

97–2 adopted with modifications a standard housing maintenance code, the Building Officials & Code Administrators International, Inc.'s (BOCA's) 1996 National Property Maintenance Code; this became section 23.16(b) of chapter 23. The second ordinance, 97–3, created a procedure for the periodic inspection and licensure of rental property. It added to chapter 23 section 23.13(b), which forbids landlords to rent out residential property that does not comply with the minimum standards established by the BOCA code to which we just referred "and any other standards adopted by the City of Platteville, as provided in [section] 23.16."

Chapter 22 of the housing code, which was not amended, contains a provision limiting the number of unrelated persons who may live in a single-family dwelling to four. Although this provision is not referred to in either section 23.13 or section 23.16, the sections directly affected by the two 1997 ordinances, a "Commentary" that was promulgated with the amended section 23.13 contains a list of "Duties of the Tenant" which quotes the multiple occupancy provision of chapter 22. The bulk of the commentary consists of requirements concerning smoke detectors, ventilation, electrical fixtures, plumbing, carpeting, and other fixtures and furnishings, and is interpretation or extension of the BOCA code. The section on "Duties of the Tenant" is unrelated to anything else in the commentary.

The amended chapter 23 divides rental property into three classes. (See sections 23.13(d)(1) and (2).) Class A properties are those found to be fully compliant with the housing code. Licenses permitting the rental of units in such properties are issued for three years. Class B properties are those with only minor infractions of the ordinance's minimum standards, and such properties are licensed for one year. Class C properties are in serious violation of the standards, and they may not be licensed for rental purposes at all. To determine classification, the City's building inspector inspects each rental property in Platteville. If a landlord or tenant refuses to permit the inspection, the building inspector can apply to a Wisconsin court for a "special inspection warrant" for real property, pursuant to Wis. Stat. § 66.122. The application for the warrant, and the warrant itself, declare the search to be for the purpose of determining compliance with sections 23.13(b) and 23.16 of the housing code. But the inspector's practice in executing such warrants is to search for violations of the multiple occupancy provision as well, and this may involve his looking in closets or bureau drawers for evidence that more than four unrelated persons are living in the apartment. (The City's concern with multiple occupancy arises from suspicion that landlords have been packing more than four college students into an apartment.) Before this suit was brought, the building inspector dealt with landlords who refused to permit inspection simply by placarding the building with notices that it was unfit to be inhabited, but he has now abandoned this practice (which the plaintiffs had also challenged) in favor of utilizing the warrant procedure.

The plaintiffs argued in the district court unavailingly that searches by the building inspector violate the Fourth Amendment because they are not supported by probable cause to believe that the specific landlords whose premises are being searched are violating any municipal or other law. As an original matter, one might think that a landlord's refusal to permit an inspection that would not, after all, invade *his* privacy, but merely that of his tenants, would be pretty good evidence that he had something to hide—namely violations of the housing code—and so would supply the probable cause that the plaintiffs are demanding. (It is the refusal that triggers the application for a search warrant.) But that argument, though it finds some support in the case law, see references in 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.6(f), pp. 330–31 (3d ed.

1996), is not pressed here. Anyway the warrants issued to determine compliance with Platteville's housing code contain no finding of probable cause to believe that a violation is occurring, and sometimes it was the tenants rather than the landlord who had refused entry to the inspector and thus precipitated the obtaining of a warrant.

■ The City seeks to justify the warrants by reference to the Supreme Court's decision in *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (see also *Michigan v. Clifford*, 464 U.S. 287, 294 n. 5, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984) (plurality opinion); *Montville v. Lewis*, 87 F.3d 900, 902 (7th Cir.1996); *Alexander v. City & County of San Francisco*, 29 F.3d 1355, 1360–61 (9th Cir.1994); cf. *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978)), which allowed the issuance of warrants unsupported by probable cause when necessary to enforce a local housing code. It is difficult to enforce such a code without occasional inspections; the tenants cannot be counted upon to report violations, because they may be getting a rental discount to overlook the violations, or, as we noted earlier, may be afraid of retaliation by the landlord or unaware of what conditions violate the code. And it is impossible to rely on a system of inspections to enforce the code without making them compulsory, since violators will refuse to consent to being inspected. In these circumstances the Fourth Amendment's requirement that all search warrants be supported by "probable cause" can be satisfied by demonstrating the reasonableness of the regulatory package that includes compulsory inspections, *Camara v. Municipal Court, supra*, 387 U.S. at 538–39, 87 S.Ct. 1727; *O'Connor v. Ortega*, 480 U.S. 709, 723, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (plurality opinion), and the reasonableness of Platteville's scheme, including such features as the exclusion of owner-occupied housing, is not questioned. The inspections are authorized only at yearly intervals in the case of Class B properties, and only triennially in the case of Class A properties.

■ So what is the fuss about here? It is about the building inspector's searching for violations of the housing code's multiple occupancy provision. Although *Camara* and the other decisions that allow the use of warrants for administrative or regulatory searches modify the conventional understanding of the Fourth Amendment's "probable cause" requirement for warrants, since it is the essence of such searches that there is no probable cause to believe that a particular search will yield evidence of a violation of law, the Supreme Court has not as yet held that the other requirements of the amendment's warrant clause—that the warrant be (1) under oath and describe with particularity (2) the place to be searched and (3) the persons or things to be seized—are to be bent for administrative warrants. See *Alexander v. City & County of San Francisco, supra*, 29 F.3d at 1361; *International Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 552–53 (9th Cir. 1986); *Pieper v. United States*, 604 F.2d 1131, 1134 (8th Cir.1979). There is no problem in the present case with compliance with either (1) or (2), but what about (3), the requirement that the persons or things to be seized be described with particularity? If this requirement is read literally, there is no problem, because the building inspector does not "seize" any evidence of a housing code violation, or any other "thing," or "person," that he may discover during the inspection. But "seizure" for purposes of the warrant clause has been understood in numerous cases, notably ones involving wiretapping and other electronic surveillance, to include seeing or hearing as well as carting off. E.g., *Berger v. New York*, 388 U.S. 41, 59, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); *LeClair v. Hart*, 800 F.2d 692, 695–96 (7th Cir.1986); *United States v. Villegas*, 899 F.2d 1324, 1334–35 (2d Cir.1990); *United States v. Freitas*, 800 F.2d 1451, 1456 (9th

Cir.1986); cf. *United States v. New York Telephone Co.*, 434 U.S. 159, 169, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977).

These cases are not, as might be supposed, in tension with *Arizona v. Hicks*, 480 U.S. 321, 324, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), which held that writing down the serial numbers of property thought to be stolen was not a seizure. When officers who are lawfully on the premises pursuant to a valid search warrant merely record what they observe there that is in plain view, they do not invade legally protected privacy, *Horton v. California*, 496 U.S. 128, 141, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Arizona v. Hicks, supra*, 480 U.S. at 326–27, 107 S.Ct. 1149; *United States v. Ramirez*, 112 F.3d 849, 852 (7th Cir.1997), or any other legal interest. See also *Maryland v. Macon*, 472 U.S. 463, 469, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985). As for statements that "seizure" within the meaning of the Fourth Amendment refers to an interference with possessory interests, e.g., *Soldal v. Cook County*, 506 U.S. 56, 62–63, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992); *United States v. Jacobsen*, 466 U.S. 109, 113, 122–25, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), it is apparent (especially from *Soldal*) that the Court means only that such an interference is actionable even if no invasion of privacy occurs, not that only possessory interests are protected. A person has no possessory interest in a telephone conversation. The interest that is invaded by wiretapping is an interest in privacy, not property, yet it is an interest that the Fourth Amendment has been interpreted to protect against seizure. The hostility to general warrants that underlies the Fourth Amendment's requirement of particularity was expressly related to a concern with privacy in *Horton v. California, supra*, 496 U.S. at 141, 110 S.Ct. 2301, and it is a solid ground for requiring that administrative search warrants describe the scope of the search with particularity.

Even if there were no constitutional requirement of particular description, or if "seizure" were so narrowly defined as to be irrelevant to most searches, a valid warrant would have to specify the object of the search, and that specification would operate to particularize the scope of the search. For the object determines the reasonable scope of the search, and all searches, to pass muster under the Fourth Amendment, must be reasonable. If you are looking for an adult elephant, searching for it in a chest of drawers is not reasonable. The principle that this example illustrates is that a search for a given type of evidence or contraband implies a limitation of the parts of the premises that may be searched. *United States v. Evans*, 92 F.3d 540, 543 (7th Cir.1996); *United States v. Eschweiler*, 745 F.2d 435, 439 (7th Cir.1984); *United States v. Jackson*, 825 F.2d 853, 865 (5th Cir.1987) (en banc).

All that the warrants at issue in the present case specify with regard to the object or scope of the search is that the building inspector is to search for violations of sections 23.13(b) and 23.16 of the housing code. The multiple occupancy limitation is in a different chapter of the housing code altogether and so is not encompassed by the reference to sections 23.13(b) and 23.16. Nevertheless, were someone appealing to us from his conviction for violation of the multiple occupancy provision and seeking to suppress evidence of that violation obtained in the course of executing one of these warrants, the appeal would probably fail. For if while looking for violations of sections 23.13(b) and 23.16, as the warrant had properly authorized him to do, the inspector happened to see signs that there were more than four unrelated persons in a single-family apartment, the evidence of what he had seen would be admissible under the plain view doctrine, applied to administrative warrants in *Michigan v. Clifford, supra*, 464 U.S. at 294, 104 S.Ct. 641 (plurality opinion). But if the signs were not in plain view—if the inspector found them by

opening drawers and closets even though such intrusions were not authorized by the warrant because evidence of violations of sections 23.13(b) and 23.16 would not be found in such places (one doesn't put a smoke detector in a bureau drawer)—then the plain view doctrine would be inapplicable and the evidence would have to be suppressed.

■ The plaintiffs claim that none of the building inspector's discoveries of violations of the limitations on multiple occupancy would be sheltered by the plain view doctrine, because his intent is to search for multiple occupancy violations. But his intent is irrelevant; the *Horton* decision forbids inquiry into the subjective intentions of the searcher.

So there would be nothing to argue over if the building inspector could always discover the telltale signs of multiple occupancy without looking into places where no evidence of a violation of section 23.13(b) or section 23.16 could be found. But apparently he cannot, for the City wants to preserve his right to rummage in closets and bureau drawers. To that end it argues that sections 23.13(b) and 23.16 incorporate chapter 22 by reference, and therefore a warrant's reference to those sections authorizes the more intrusive search. The incorporation by reference is oblique, to say the least. Only the commentary (the legal significance of which is nowhere indicated) to section 23.13(b) mentions chapter 22 at all; it quotes the limitation on multiple occupancy, but under a heading called "Duties of the Tenant," and the reader is left to infer without further aid that the landlord could be denied a license because of the tenant's breach of the tenant's own duties. Chapter 23 says only that a license can be denied for violation of "the minimum standards for residential rental property established by this ordinance," section 23.13(d), and those minimum standards are defined, see section 23.13(b), as the BOCA standards plus any other standards adopted by Platteville "as provided in [section] 23.16." Since section 23.16 contains no reference to chapter 22, the other standards would appear to be the modifications that section 23.16 makes in the BOCA standards.

If this is incorporation by reference, then incorporation by reference is not always, and certainly not here with regard to chapter 22, a satisfactory method of complying with the constitutional requirement of particular description. The purpose of that requirement, as explained in our recent opinion in *United States v. Stefonek*, 179 F.3d 1030, 1033–34 (7th Cir. 1999), or of the implicit requirement discussed above that the warrant specify the object and therefore scope of the search, is to confine searches pursuant to warrants within boundaries fixed by a judicial officer. The warrant must specify the objects of the search and the officers executing the warrant must confine the search to the objects approved by the judicial officer upon consideration of the application. If the judicial officer knows what a reference to "sections 23.13(b) and 23.16" means (and surely the building inspector, at least, does), there is little point to requiring that the text of these sections be set forth in the application for the warrant and in the warrant itself. The citation to the sections is an adequate shorthand, just as the words of the sections are an adequate shorthand for the things that the words denote. But if the reference is to the entire law of Wisconsin, or even to the entire housing code of the City of Platteville, the adequacy of the shorthand is cast into doubt. *United States v. Leary*, 846 F.2d 592, 600–02 (10th Cir.1988); *United States v. Spilotro*, 800 F.2d 959, 965 (9th Cir.1986); compare *United States v. Vitek Supply Corp.*, 144 F.3d 476, 481 (7th Cir. 1998). The judicial officer to whom the application for a warrant is brought is a judge whose jurisdiction is county-wide rather than limited to Platteville. He cannot be assumed to know a large body of detailed local regulatory law by heart. He cannot be assumed to know that the build-

ing inspector in applying for the warrant is implicitly requesting authorization to search through closets, trunks, wardrobes, medicine cabinets, and bureau drawers for evidence of multiple occupancy in violation of chapter 22 of the housing code. Granted that section 23.13 comes with a commentary that does refer to that chapter, the commentary is long and detailed and its legal significance obscure, as we have seen. Nor is it obvious that anyone requesting authorization to search for violations of chapter 22 must be intending to rummage through drawers and closets. It would be an extreme fiction to assume that the judges who issue these warrants know that this is what they are authorizing.

So the district judge was right to hold that the warrants for inspections by Platteville's building inspector do not authorize the intrusive searches conducted pursuant to them. But we disagree with her suggestion that Platteville can comply with the Fourth Amendment by amending sections 23.13(b) and 23.16 to incorporate chapter 22 by explicit reference rather than by making the warrants more specific. Amending the ordinance would be at once supererogatory, because it is reasonably clear, despite the doubts that we have just expressed, that the building inspector is authorized by municipal law to conduct such searches, and ineffectual to satisfy requirements of the Fourth Amendment that are addressed to the contents of the warrant rather than to the local authority for it.

Taking the issue of municipal law first, we interpret the commentary as simply a reminder of the existence by virtue of other chapters of the housing code not amended by the 1997 ordinances of *additional* minimum standards, beyond those contained in section 23.16, that rental housing in Platteville must comply with and so that are a proper concern of the classification and inspections scheme created by those ordinances. We cannot think of any other function the commentary would have, given that it follows and was promulgated at the same time as the ordinances and that it consists largely of just the sort of safety regulations that building inspectors traditionally concern themselves with. Inspections for compliance with the standards referred to in the commentary, including the limitation on multiple occupancy, are therefore authorized by local law. But the *warrant* must authorize such inspections specifically. Thus, if the building inspector wants to search for violations of the multiple occupancy limitation, he should say in his application for a search warrant that he wants to search the specified rental property not only for evidence of violations of sections 23.13(b) and 23.16 but also "for evidence, including evidence contained in closets, cabinets, trunks, bureau drawers, and other closed or contained spaces, that more than four unrelated persons are living in a single-family dwelling unit, in violation of chapter 22 of the Platteville housing code," or words to that effect.

■ This is not to say that such a warrant should be granted, or even that it could be granted without infringing the Fourth Amendment. When the Supreme Court authorized administrative searches of residential housing, it didn't grant state and local governments carte blanche. The requirement of reasonableness that the Fourth Amendment imposes on all searches, whether or not pursuant to warrant, entails the striking of a balance between the benefits of an administrative search in implementing valid governmental programs and its costs to the property and privacy interests of the persons whose homes (whether owned or rented, *Chapman v. United States,* 365 U.S. 610, 616–17, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961)) are searched. E.g., *Michigan v. Sitz,* 496 U.S. 444, 455, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990); *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 665–66, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989); *Camara v. Municipal Court, supra,* 387 U.S. at 536–37, 87 S.Ct. 1727; *Dimeo v.*

*Griffin,* 943 F.2d 679, 681 (7th Cir.1991) (en banc). Counting articles of underwear to determine how many people are living in an apartment may intrude on privacy further than the public interest in limiting apartment crowding justifies. But that is a separate issue from the question of the particularity of a warrant's description, and an issue insufficiently argued to require our reaching it. For, so far as the impact of the inspection program on privacy is concerned, the plaintiffs have been content to make a broadside attack upon the entire program and it is apparent from the case law that such an attack cannot succeed. An inspection that did not involve rummaging through closets and bureau drawers would clearly be a reasonable method of enforcing the housing code. Another issue that is not before us is whether consent to the inspection without a warrant should be thought to encompass an inspection of drawers and closets.

 Two other issues have been preserved but require only brief discussion. Section 23.13 imposes a fee on landlords for the inspections required by Ordinance 97–3, and the plaintiffs, in a supplementary state law claim in their complaint, argue that the fee is really a tax and that Platteville's home-rule powers do not include the power to tax. The district judge disagreed, but she should never have reached the issue. For if the fee *is* a tax, then this suit, insofar as it seeks to enjoin the tax (the only relief sought is injunctive), is barred by the Tax Injunction Act, 28 U.S.C. § 1341. The Act is applicable to local as well as state taxes. *Hager v. City of West Peoria,* 84 F.3d 865, 868 (7th Cir.1996); *Folio v. City of Clarksburg,* 134 F.3d 1211, 1214 (4th Cir.1998), and forbids a federal court to enjoin the collection of taxes imposed under the authority of state law unless the taxpayer lacks an adequate remedy under state law, § 1341; *California v. Grace Brethren Church,* 457 U.S. 393, 411–13, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982)—and the plaintiffs have one. See *Blue Top*

*Motel, Inc. v. City of Stevens Point,* 107 Wis.2d 392, 320 N.W.2d 172 (1982); *Jordan v. Village of Menomonee Falls,* 28 Wis.2d 608, 137 N.W.2d 442 (1965). The Tax Injunction Act has not been mentioned in this litigation. But as the limitation that it places on the powers of the federal courts is deemed jurisdictional, *Arkansas v. Farm Credit Services,* 520 U.S. 821, 823, 117 S.Ct. 1776, 138 L.Ed.2d 34 (1997); *RTC Commercial Assets Trust 1995–NP3–1 v. Phoenix Bond & Indemnity Co.,* 169 F.3d 448, 454 (7th Cir.1999); *Jefferson County v. Acker,* 137 F.3d 1314, 1317–18 (11th Cir.1998), cert. granted, —— U.S. ——, 119 S.Ct. 589, 142 L.Ed.2d 532 (1998), we are obliged to enforce it regardless.

 Finally, the district judge awarded the plaintiffs $1,500 in attorneys' fees, roughly 10 percent of what they requested. The plaintiffs argue that they are entitled to the full amount sought and the defendant that the plaintiffs should get nothing. Neither position is tenable. The plaintiffs prevailed with regard to the issue of the specificity of the description in the warrants, so they're entitled to something, but they lost most of the case. Their object after all was to knock out the inspection fee and to limit warrants for the inspection of rental housing to cases in which the building inspector has probable cause to believe that a violation of the licensing ordinance is occurring; they utterly failed to achieve these ambitious objectives. Given the tiny amount of money at issue, we're not going to fuss over whether 90 percent was precisely the right discount to apply to the request for fees. The less there is at stake in a fee application, the less time the district court should spend in considering it. *In re Continental Illinois Securities Litigation,* 962 F.2d 566, 570 (7th Cir.1992); *Ustrak v. Fairman,* 851 F.2d 983, 989 (7th Cir.1988); *Kossman v. Calumet County,* 849 F.2d 1027, 1031 (7th Cir.1988); *Heiar v. Crawford County,* 746 F.2d 1190, 1204 (7th Cir. 1984).

The judgment is modified to place dismissal of the challenge to the inspection fee on jurisdictional grounds, but is otherwise affirmed.

Lest there be any misunderstanding about what this conclusion means, we add that any issues of state law remain open for determination in the proper forum. Section 252(e)(6) authorizes a federal court to determine whether the agency's decision departs from federal law. A decision "interpreting" an agreement contrary to its terms creates a different kind of problem—one under the law of contracts, and therefore one for which a state forum can supply a remedy.

This allocation of authority has a potential to cause problems. Federal jurisdiction under § 252(e)(6) is exclusive when it exists. Thus every time a carrier complains about a state agency's action concerning an agreement, it must start in federal court (to find out whether there has been a violation of federal law) and then may move to state court if the first suit yields the answer "no." This system may not have much to recommend it, but, as the Supreme Court observed in *Iowa Utilities Board*, the 1996 Act has its share of glitches, and if this is another, then, the legislature can provide a repair.