In re Anthony J. PONTES, Debtor.

**Anthony J. Pontes, Plaintiff,**

v.

**Michael F. Cunha, Sunset Realty, and Deborah Lapatin, Defendants.**

**C.A. No. 02–420S.**

United States District Court,
D. Rhode Island.

March 30, 2004.

John Rao, Peace Dale, RI, for Plaintiff.

Pamela B. Quigley, Fernando S. Cunha, Esq., Fernando S. Cunha, Ltd., William J. Delaney, Tillinghast, Licht, Perkins, Smith & Cohen LLP, Providence, RI, Richard Riendeau, Pawtucket, RI, for Appellant.

## DECISION AND ORDER

SMITH, District Judge.

This matter is before the Court on Michael F. Cunha's ("Cunha"), Deborah Lapatin's ("Lapatin"), and Sunset Realty's ("Sunset") (collectively, "Appellants") appeal[1] from an Opinion and Order of the U.S. Bankruptcy Court for the District of Rhode Island, which held the Rhode Island Tax Sales Statute (the "Tax Sale Statute"), R.I. Gen. Laws §§ 44–9–1 *et seq.*, unconstitutional insofar as it fails to provide property owners notice of their right of redemption under Rhode Island law. For the reasons discussed below, the Opinion and Order of the Bankruptcy Court is

---

[1]. By Order of this Court dated April 14, 2003, the three appeals that comprise this case, 02–420S, 02–421S, 02–422S, were consolidated under 02–420S.

AFFIRMED. This Court writes separately to provide additional analysis regarding several important questions raised in this appeal.

### I. Appellate Jurisdiction and Standard of Review

District courts have jurisdiction to hear appeals from judgments, orders, and decrees of the bankruptcy court. *See* 28 U.S.C. § 158. Appeals from a bankruptcy court "are 'taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeal from the district courts.'" *In re Ryan*, 282 B.R. 742, 747 (D.R.I.2002) (quoting 28 U.S.C. § 158(c)(2)). The standard of review is a bifurcated one. *In re Edmonston*, 107 F.3d 74, 75 (1st Cir.1997). While the bankruptcy court's findings of fact are reviewed for clear error, *see* Fed. R. Bankr.P. 8013, its conclusions of law are reviewed *de novo*. *See id.*

### II. Background[2]

In August 1998, pursuant to R.I. Gen. Laws § 44–9–1 *et seq.*, the Providence Tax Collector sold Anthony Pontes' ("Pontes" or the "Debtor") residence at tax sale to recover delinquent taxes due on his prop-

erty. Prior to the sale, the Collector sent by certified mail a Tax Sale Notice (the "Notice"), advising Pontes of the time and place of the sale and that the sale could be prevented by payment of the overdue taxes. The Notice did not advise Pontes of the statutory right to redeem his property, R.I. Gen. Laws § 44–9–21,[3] or of the existence of the procedures available to exercise the right of redemption.

The overdue taxes were not paid, the sale was held, and Sunset bought the property for $2,884.81 (the taxes owed plus accrued charges and penalties). Sunset received a "Collector's Deed" that is subject only to the Debtor's statutory right of redemption and exists for at least one year following the tax sale, and thereafter until the tax sale purchaser files a petition for foreclosure of redemption. *See* R.I. Gen. Laws §§ 44–9–21 and 44–9–25 (2000).[4] After the tax sale, Sunset recorded the deed in the Providence land evidence records. Pontes received no notice, actual or otherwise, that the sale took place, nor did he receive any post-sale notice of the right of redemption, the length of time that he had to redeem, or the amount of money required to redeem. In fact, Pontes re-

---

**2.** This factual recitation is taken largely from the Opinion of the Bankruptcy Court, *see* 280 B.R. 20 (Bankr.D.R.I.2002).

**3.** R.I. Gen. Laws § 44–9–21 states:

Any person may redeem by paying or tendering to a purchaser, other than the town, his or her legal representatives, or assigns, or to the person to whom an assignment of a tax title has been made by the town, at any time prior to the filing of the petition for foreclosure, in the case of a purchaser the original sum and any intervening taxes which have been paid to the municipality plus interest thereon at the rate of one [percent] (1%) per month and costs paid by him or her, plus a penalty as provided in § 44–9–19, or in the case of an assignee of a tax title from a town, the amount stated in the instrument of assign-

ment, plus the above-mentioned penalty. He or she may also redeem the land by paying or tendering to the treasurer the sum which he or she would be required to pay to the purchaser or to the assignee of a tax title, in which case the town treasurer shall be constituted the agent of the purchaser or assignee. The right of redemption may be exercised only by those entitled to notice of the sale pursuant to §§ 44–9–10 and 44–9–11.

**4.** R.I. Gen. Laws § 44–9–25 states, in pertinent part:

After one year from a sale of land for taxes, except as provided in §§ 44–9–19—44–9–22, whoever then holds the title acquired may bring a petition in the superior court for the foreclosure of all rights of redemption thereunder.

ceived no notice of any kind until one year after the tax sale, in September 1999, when he received a copy of an amended "Petition To Foreclose Tax Lien," filed in the Rhode Island Superior Court by Sunset. The petition, which initiated the procedure to foreclose the right of redemption, advised Pontes of the existence of the action and the deadline for filing an answer. The petition stated in part:

> Whereas, an amended petition has been presented to said Court by SUNSET REALTY ... to foreclose all rights of redemption from the tax lien proceedings described in said petition in and concerning a certain parcel of land. ...
>
> If you desire to make any objection to said petition you or your attorney must file a written appearance and answer, under oath, setting forth clearly and specifically your objections or defense. ...

See Joint Statement of Stipulated Facts, Docket No. 99–13945, Ex. C, ¶¶ 1, 4–5. Less than two months after receiving a copy of the "Petition To Foreclose Tax Lien," Pontes sought protection under Chapter 13 of the Bankruptcy Code, and shortly thereafter brought an adversary proceeding challenging the constitutionality of the Tax Sale Statute. In that proceeding, Pontes alleged that the Tax Sale Statute violated due process because it failed to provide him meaningful notice of the right of redemption and the procedures available to redeem his property under the statute.

The City of Providence (the "City") and the State of Rhode Island (the "State") objected to the jurisdiction of this Court, first on the ground that principles of comity and the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, bar this type of case from being brought in *any* federal court. The

City also objected to the merits of Pontes' argument by arguing that taxpayers are charged with knowledge of their rights under the law, and that the Tax Sale Statute as written provides due process.

The State, appearing specially, argued in the Bankruptcy Court that it is an indispensable party to the suit and dismissal of the adversary proceeding was required based on its sovereign immunity.

Based on the stipulated record submitted to the Bankruptcy Court, and the arguments of counsel on cross-motions for summary judgment, the Bankruptcy Court found as follows: (1) that notwithstanding the TIA, the Bankruptcy Court had jurisdiction to hear this matter; (2) that the State was not an indispensable party; and (3) that sovereign immunity does not apply in this proceeding.[5] As to the constitutional question, the Bankruptcy Court concluded that the Tax Sale Statute fails to provide meaningful notice of the right to redeem property after a tax sale, and that this omission violates the Due Process Clause of the Fourteenth Amendment.

### III. *The Question of Jurisdiction*

The City's argument that the TIA bars the Court from exercising jurisdiction requires this Court to examine both the TIA (and its historical origins and scope) and the so-called "bankruptcy exception" to the TIA. As the discussion below illustrates, this is not a well-lit path. No case in the First Circuit and few courts anywhere have confronted the question presented here.

#### A. *The TIA*

The journey starts with the TIA itself, which states simply: "The district courts shall not enjoin, suspend or restrain the

---

5. The State has not raised its indispensable party and sovereign immunity arguments on

appeal, and therefore these issues require no further analysis by this Court.

assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. When the Constitution's framers "split the atom of sovereignty," *U.S. Term Limits, Inc. v. Thornton,* 514 U.S. 779, 838, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995) (Kennedy, J., concurring), they recognized that the states' taxing power is an essential element of state sovereignty, which could not be abridged by the federal government.

> [T]he individual States should possess an independent and uncontrollable authority to raise their own revenues for the supply of their own wants.... [T]hey would under the plan of the Convention retain that authority in the most absolute and unqualified sense; and ... an attempt on the part of the national Government to abridge them in the exercise of it would be a violent assumption of power unwarranted by any article or clause of its Constitution.

The Federalist No. 32, at 199 (Alexander Hamilton)(Jacob E. Cooke, 1961). Very early in the Nation's history, in *McCulloch v. Maryland,* 4 Wheat. 316, 17 U.S. 316, 425, 4 L.Ed. 579 (1819), the Supreme Court recognized that interference with state taxing power could jeopardize the delicate balance of state-federal relations. Fifty years later, the Court reiterated the point:

> It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes may derange the operation of government, and thereby cause serious detriment to the public.

*Dows v. City of Chicago,* 11 Wall. 108, 78 U.S. 108, 110, 20 L.Ed. 65 (1870).

The TIA was enacted to ensure the continuity of these fundamental principles after the Supreme Court's landmark decision in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which held that federal courts may enjoin state officers from enforcing an unconstitutional law. In passing the TIA, Congress "recognized that the autonomy and fiscal stability of the States survive best when state tax systems are not subject to scrutiny in federal courts." *Fair Assessment in Real Estate Ass'n. v. McNary,* 454 U.S. 100, 102–03, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); *Arkansas v. Farm Credit Servs. of Central Arkansas,* 520 U.S. 821, 826–27, 117 S.Ct. 1776, 138 L.Ed.2d 34 (1997) ("Enactment of the [TIA] reflects a congressional concern to confine federal-court intervention in state government, a concern prominent after ... *Ex parte Young.* ..."); *Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n.,* 515 U.S. 582, 590–91, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995) ("the [TIA] may be best understood as but a partial codification of the federal reluctance to interfere with state taxation"); *California v. Grace Brethren Church,* 457 U.S. 393, 409 n. 22, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982) ("Congress worried not so much about the form of relief available in the federal courts, as about divesting the federal courts of jurisdiction to interfere with state tax administration"). Moreover, the Supreme Court has emphasized that the TIA is to be interpreted broadly and that federal courts are to "guard against interpretations of the [TIA] which might defeat its purpose and text." *Farm Credit Servs.,* 520 U.S. at 827, 117 S.Ct. 1776.

■ The tax scheme at issue in this case involves the collection of municipal property taxes.[6] As such, it falls squarely within the scope of the TIA's prohibition on federal interference. A suit to enjoin the tax collection scheme is as much an interference with the tax scheme as a suit to enjoin the tax itself. *See In re Gillis*, 836 F.2d 1001, 1008 (6th Cir.1988) ("the interference by the federal courts into the state tax system is the same in degree and kind as a suit seeking to enjoin a state tax; and the expense to the state in defending the action is identical"). Thus, it is beyond quarrel that the TIA precludes federal court jurisdiction in this case unless some other basis for jurisdiction exists that supercedes the TIA.

B. *The "Bankruptcy Exception" to the TIA*

The City argues that the TIA, and the long-standing principles of comity and federalism that undergird it, precluded the Bankruptcy Court from exercising jurisdiction over Pontes' challenge to the Tax Sale Statute. In rejecting this argument, the Bankruptcy Court relied on the so-called "bankruptcy exception" to the TIA found at 11 U.S.C. § 505. Section 505 states that a bankruptcy court "may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to [a] tax," unless "such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1)(2) and (a)(2)(A). The

Bankruptcy Court cited several cases for its conclusion that § 505 carves out a "well recognized exception" to the TIA and principles of comity for cases being adjudicated in a bankruptcy court. *See In re Stoecker*, 179 F.3d 546 (7th Cir.1999); *City Vending of Muskogee v. Oklahoma Tax Comm'n*, 898 F.2d 122 (10th Cir.1990); *Adams v. Indiana*, 795 F.2d 27 (7th Cir. 1986). In its brief discussion of these cases, the Bankruptcy Court found that "[c]ourts considering the interplay between the T.I.A. and Section 505 have held that Congress intended the more specific Bankruptcy Code provision to override and supercede the older general language of the T.I.A." 280 B.R. at 27.[7]

The Tenth Circuit's discussion in the *Muskogee* case of the policies underlying § 505, which was relied upon by the Bankruptcy Court, is by far the most helpful of the cases cited. *Muskogee* involved two assessments against distribution of cigarettes to an Indian tribe that the distributor contended were unconstitutional. The district court held that it lacked jurisdiction to hear the case because of the TIA. The Circuit Court upheld that conclusion, but seemed to rely on other grounds. 898 F.2d at 124–26. The court stated that § 505 permits a bankruptcy court to consider questions of "state tax assessments" where the taxpayer has failed to pursue state remedies. The court pointed to two policies underlying this exception to the TIA. First, the need for "prompt resolution of a debtor's tax liability, where that

6. There is no dispute that municipal property taxes are covered by the TIA. *See, e.g., Platteville Area Apartment Assoc. v. City of Platteville*, 179 F.3d 574, 582 (7th Cir.1999) (holding that the TIA applies to local as well as state taxes); *Home Builders Assoc. of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 n. 6 (5th Cir.1998) (same); *Folio v. City of Clarksburg, W. Va.*, 134 F.3d 1211, 1214 (4th Cir.1998) (same). While the tax in issue is a

municipal tax, the Tax Sale Statute is a state law applicable to all cities and towns in Rhode Island.

7. Both *Stoecker* and *Adams* involved complicated factual scenarios and discussions of both the TIA and § 505. However, neither case involved a direct conflict between the TIA and § 505 such as is present in this case.

liability has not yet been determined prior to the bankruptcy proceeding, in the same forum addressing the debtor's overall financial condition"; and second, the need to protect " 'creditors from the dissipation of the estate's assets which could result if the creditors were bound by a tax judgment which the debtor, due to his ailing financial condition, did not contest.' " *Id.* at 124–125 (internal citation omitted). Thus, while the court did hold that § 505 may provide an exception to the jurisdictional bar of the TIA, it declined to apply the exception because there had been a final determination in the state tax tribunal.

 As *Muskogee* indicates, while the jurisdictional bar of the TIA is indeed broad, § 505 appears to allow a federal court to exercise jurisdiction if the amount or legality of any tax, fine, or penalty relating to the tax needs to be determined in order to finalize the estate and move the bankruptcy case to closure. This does not mean that § 505 should permit a debtor/taxpayer simply to forego the state process and use the bankruptcy court's adversary proceeding vehicle to "federalize" a question that otherwise would be exclusively an issue of state law. A taxpayer cannot challenge a state tax for the first time in federal court when a state provides a process to challenge the tax, *see, e.g., Patel v. City of San Bernardino*, 310 F.3d 1138, 1141 (9th Cir.2002); *Bernard v. Village of Spring Valley, N.Y.*, 30 F.3d 294, 297 (2d Cir.1994) (holding that action in federal court was barred when plaintiff had procedurally adequate remedies that could be sought in state court); *Daytona Beach Racing and Recreational Facilities Dist. v. County of Volusia*, 579 F.2d 367, 369 (5th Cir.1978) (holding that plaintiff could not "fail to take advantage of the state remedy and then litigate in federal court"), or where there is a final adjudication at the state level (and a party seeks only a second bite at the apple). Further, even when a challenge is based on federal law, or where an action is purely injunctive (or declaratory) in nature but does not impact the estate and the efficient resolution of the case, the federal court will decline to entertain the question. However, where the challenge does have a direct impact on the amount of money in the estate, would contribute to the efficient resolution of the bankruptcy petition, and raises a federal constitutional question, as this one does, it falls well within the scope of the federal court's jurisdiction under § 505's carve-out to the TIA.

Pontes has neither challenged the amount of the assessment on his property nor the legality of the tax through the state court process. The City initiated the collection process by slating the property for tax sale. Pontes made no challenge— he simply did not pay. Only after the tax title was purchased by Sunset at a tax sale, and foreclosure proceedings were initiated, did Pontes file his Chapter 13 petition and bring this adversary proceeding. Thus, it is uncontested that Pontes has never challenged the assessment or its legality at the administrative level or in state court.

 The challenge by Pontes does, however, have a potentially significant financial impact on the estate. If the Tax Sale Statute is held unconstitutional and the tax sale is void, then any costs, penalties, interest, and attorneys fees associated with the redemption are eliminated. In this respect, § 505 clearly conferred jurisdiction upon the Bankruptcy Court to consider the Debtor's constitutional challenge. If it were otherwise, a bankruptcy court would not be able to determine accurately the obligations of a debtor that are essential to the approval of the Chapter 13 plan, or protect an estate from inappropriate encroachments if the redemption process is constitutionally deficient.

Having concluded that the Bankruptcy Court properly asserted jurisdiction under § 505, this Court will turn to the due process claim raised by the Debtor.

## IV. *Due Process*

There is no dispute that Pontes was entitled to redeem his property in accordance with the tax sale procedure set forth in R.I. Gen. Laws § 44–9–1 *et seq.* On appeal, the question is simply whether the Tax Sale Statute provided Pontes with appropriate notice and a sufficient opportunity to assert his right of redemption.

### A. *The Right of Redemption and Due Process Protection*

■ The Due Process Clause of the Fourteenth Amendment only protects significant property interests. *See Mathews v. Eldridge,* 424 U.S. 319, 332–33, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). To determine if redemption is a property interest for purposes of the Fourteenth Amendment's Due Process Clause, courts should look to "an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Bankruptcy Court determined the right to redemption to be a property interest in Rhode Island because of the way it is treated by the Tax Sale Statute. *See* R.I. Gen. Laws § 44–9–12 (stating that a Collector's deed shall convey the land to the purchaser, subject to the *right* of redemption). This Court agrees with the Bankruptcy Court. Accordingly, this Court must determine whether this right of redemption is "significant" for purposes of a due process analysis.

"A 'person's interest in a benefit is a 'property' interest for due process purposes if there are … rules … that support his claim of entitlement to the benefit and that he may invoke at a hearing.' " *Federal Deposit Ins. Corp. v. Morrison,* 747 F.2d 610, 614 (11th Cir.1984)(quoting *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). The right of redemption at issue in this case is part of a statutory scheme that is intended to protect property owners from the inequities that often exist in tax sales. To protect that right, the Rhode Island General Assembly provided property owners with a statutory right to retake their property following a tax sale once the outstanding taxes are paid. The Rhode Island Supreme Court has stressed the importance of the right of redemption. *See Albertson v. Leca,* 447 A.2d 383, 388 (R.I. 1982) (holding that "the right of redemption is a valuable property right … and the potential loss to the owner is grave"). Moreover, as the Bankruptcy Court held, the right of redemption implicates one of "life's basic necessities—the place where [one] lives." 280 B.R. at 33. Accordingly, this Court agrees with the Bankruptcy Court and holds that the right of redemption is a significant property interest protected by the Due Process Clause.[8]

### B. *The Right of Redemption: What Process is Due?*

Procedural due process is a flexible concept that "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *see*

---

**8.** The right of redemption is a property interest distinct and separate from an owner's right of ownership in the underlying property itself. In this case, the right at issue is triggered once the government initiates the tax sale process, and continues to exist through the expiration of the redemption of period. *See* R.I. Gen. Laws § 44–9–29.

*Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

■ In order to determine whether the Tax Sale Statute satisfies due process, the Bankruptcy Court correctly applied the balancing test first set forth in *Mathews,* 424 U.S. at 334, 96 S.Ct. 893. Under the *Mathews* balancing test, a court is required to weigh three factors when determining what procedural safeguards the Constitution requires in a particular case: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* After considering these factors, the Bankruptcy Court held that the Tax Sale Statute fails to satisfy due process. *See In re Pontes,* 280 B.R. at 34. This Court will conduct a *de novo* review of these factors.

### 1. The Private Interest That Will Be Affected

This factor easily and heavily weighs in Pontes' favor. As this Court noted, *supra,* Rhode Island law regards the right of redemption as a significant property interest that merits due process protection under the Fourteenth Amendment. Moreover, the right of redemption is the *type* of property interest that deserves special attention because, at its core, the right of redemption implicates an individual's ability to retain his or her home. Accordingly, this Court finds that the Bankruptcy Court correctly applied and resolved this factor in the Debtor's favor.

### 2. Risk of Erroneous Deprivation of Property

In order to diminish the risk of an erroneous deprivation of property, the Supreme Court has held that the Constitution requires notice and a hearing before a state can deprive a person of his or her property. *See, e.g., Zinermon,* 494 U.S. at 127, 110 S.Ct. 975; *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)(at a minimum, due process requires "*some* kind of notice and ... *some* kind of hearing") (emphasis in original). Moreover, not only does the Due Process Clause mandate notice, but it also dictates the *quality* of that notice. In this case, the constitutionality of the Tax Sale Statute hinges on this principle.

Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). While *Mullane* is the seminal case regarding the adequacy of notice for purposes of the Due Process Clause, its application in the property tax sale context in *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), is particularly relevant to this case.

In *Mennonite,* a mortgagee's recorded lien on real property had been extinguished under Indiana law by virtue of a tax sale and expiration of the redemption period. The mortgagee sued the current owner, arguing that its due process rights had been violated because (1) it had not received constitutionally adequate notice of the pending tax sale, and (2) it had not received notice of the opportunity to redeem the property following the tax sale. 462 U.S. at 795, 103 S.Ct. 2706. The Indiana courts upheld the statutory notice

456

scheme. The United States Supreme Court reversed, holding that due process required actual notice of the tax sale to the known mortgagee, but expressly stated that it was not deciding the issue of whether the mortgagee was also entitled to actual notice of its right to redeem the property. *Id.* at 800 n. 6, 103 S.Ct. 2706. The *Mennonite* Court relied on the notice principles set forth in *Mullane* to reach this decision. *Id.* at 795, 103 S.Ct. 2706. Finding that the mortgage was a "substantial property" interest and noting that Indiana tax sales "significantly affected" mortgages, the Court held that the bank enjoyed a due process right to receive actual notice of the tax sale. *Id.* at 798, 103 S.Ct. 2706.

The constitutional question that this Court must therefore address, which was not reached in *Mennonite,* is whether due process requires the City of Providence to provide interested parties actual notice of the right to redeem their property in the event it is sold at a tax sale. The Appellants contend that it does not.

Appellants contend that it is not accurate to state that the property owner *never* receives notice of his or her right of redemption under the current version of the Tax Sale Statute. They are correct: R.I. Gen. Laws § 44–9–25 requires the holder of a tax title to file a Notice of Intention to Foreclose the Right of Redemption in state superior court anytime after one year from the time of the tax sale in order to obtain fee simple title to the property. The property owner is served with a copy of this notice. Upon receipt of this notice, the property owner may successfully contest the foreclosure of the right of redemption by filing an answer to the notice and agreeing to pay the entire delinquent tax bill, plus interest and statutory penalties for the failure to pay the taxes on time. There are also attorneys' fees and costs associated with the foreclosure proceeding.

The issue in this case, however, is not whether the property owner ever receives notice of his or her right of redemption. Instead, the issue is whether the Due Process Clause is violated by the fact that the Tax Sale Statute permits the City to wait until the last possible moment to inform the property owner (through the Tax Title holder) of the right of redemption.

While neither the First Circuit nor any of its district courts has addressed this question, the Rhode Island Supreme Court recently confronted a constitutional challenge to the notice provision of the Rhode Island Tax Sale Statute that merits attention. *See Kildeer Realty v. Brewster Realty Corp.,* 826 A.2d 961 (R.I.2003). In *Kildeer,* the record owner of property granted a mortgage on the property to the Brewsters, who recorded their interest in the property by filing a mortgage deed in Providence's land evidence records. The property was subsequently conveyed several times until it ended up in the hands of 514 Broadway, Inc. During these conveyances, the property remained subject to the Brewsters' mortgage. Ultimately, because of a default on the underlying loan, the mortgage was foreclosed on May 21, 1999, and the property was sold at a tax sale to Brewster Realty. On May 28, 1999, the foreclosure deed was properly recorded in the land evidence records. Prior to the mortgage foreclosure, the Providence tax assessor assessed taxes on the property for the 1998 tax year. The tax had been assessed on Craig Raposa, the record owner when the taxes were assessed on December 31, 1997. The tax was never paid, and a tax sale was scheduled for August 19, 1999. As part of the tax sale, the collector's office conducted a title search through June 24, 1999, and notified all mortgage holders of record of the impending tax sale. However, for unknown reasons, the title search did not uncover the Brewsters' mortgage on the

property despite its proper filing in the land evidence records. Consequently, the Brewsters never received notice of the impending tax sale. On August 19, 1999, the property was sold to Kildeer Realty at a tax sale, and Kildeer Realty properly recorded its interest in the property. More than one year after the tax sale, Kildeer Realty filed a petition to foreclose the right of redemption pursuant to R.I. Gen. Laws § 44–9–25, and provided notice to all interested parties. This time, however, Brewster Realty received notice of the pending action. Despite receiving notice, Brewster Realty did not contest the foreclosure, and a final decree was entered foreclosing Brewster Realty's right of redemption.

Brewster Realty challenged the judgment, arguing that its failure to receive notice of the tax sale violated the Due Process Clause of the Fourteenth Amendment. The Superior Court rejected this argument because Brewster Realty never responded to the petition to foreclose the right of redemption. On appeal, Brewster Realty reasserted its due process argument. The Supreme Court held that Brewster Realty was entitled to notice of the tax sale, but that it had waived its argument when it failed to answer the forfeiture petition. "Any previous defects in the notice procedure of the tax sale were negated by Brewster Realty's subsequent failure to answer or appear upon notice of the petition to foreclose its right of redemption." 826 A.2d at 966.[9]

If a property owner can waive the right to receive notice of an upcoming tax sale by failing to respond to the foreclosure of the right of redemption, then arguably the owner could also waive the right to receive notice of the right of redemption (which

would be contained in the initial tax sale notice under the theory proposed by Pontes and the Bankruptcy Court). However, in this case, Pontes did contest the validity of the tax sale by initiating the adversary proceeding after filing for bankruptcy. Accordingly, because there is no waiver in this case, this Court finds that *Kildeer* has no effect on the narrow constitutional issue presented here. Of course, even if one were to perceive a conflict between *Kildeer* and the holding of the Bankruptcy Court, this Court is in no way bound by *Kildeer* with regard to federal constitutional issues.

In finding the Tax Sale Statute unconstitutional, the Bankruptcy Court primarily relied on *Dionne v. Bouley*, 583 F.Supp. 307 (D.R.I.1984), *aff'd as modified*, 757 F.2d 1344 (1st Cir.1985). In *Dionne*, a social security beneficiary challenged the constitutionality of Rhode Island's post-judgment garnishment statute on the ground that the statute failed to advise her that her social security funds are exempt from attachment. The district court agreed and held the statute unconstitutional. On appeal, the First Circuit upheld the decision of the district court and endorsed the lower court's use of the *Mathews* balancing test to determine the statute's risk of erroneous deprivation of property. 757 F.2d at 1352–53.

The Bankruptcy Court analogized the Tax Sale Statute to the post-judgment garnishment statute in *Dionne* and reasoned that the two are "as close as it gets, since notice in either case gives owners the opportunity to remove attachments from their property." 280 B.R. at 33. This Court agrees with the Bankruptcy Court's

**9.** *Kildeer* was decided by a three-judge panel of the Rhode Island Supreme Court in June 2003, and therefore could not have been ad-

dressed by the Bankruptcy Court or by the parties on appeal.

reliance on *Dionne*.[10] Like the social security benefits at issue in *Dionne*, this case also implicates one of "life's basic necessities—the place where [one] lives." *See id.*

■ The Appellants argue that Pontes did receive notice of the right of redemption when Sunset Realty filed the petition to foreclose the right of redemption under R.I. Gen. Laws § 44–9–29. It is true that a taxpayer receives notice of the right of redemption under § 44–9–29, but by the time the taxpayer receives this notice the right of redemption has become burdened with interest, penalties, attorneys' fees, and court costs associated with contesting the foreclosure petition. Due to the often substantial economic burden these expenses place on the taxpayer, the Court finds that waiting to provide notice of the right of redemption until the end of the tax sale process effectively deprives the taxpayer of the right itself. The taxpayer should be notified of the right of redemption *before* it is so burdened by the increased expenses associated with § 44–9–29 and constrained by time so as to make the "right of redemption" a mere shibboleth.

One is left to wonder why the City would choose not to notify delinquent taxpayers of their statutory right to make good on their delinquent tax debt and their right to do so within one year. Taxpayers are not even notified that their property has been sold at tax sale, let alone of their right to redeem. The position of the City is even more mystifying at a time when its resident population (many of whom are property owners) is increasingly comprised of the elderly and poor, many of whom are low income earners from diverse cultures, who may not speak English, and who are unfamiliar with the workings of local government. This Court finds that the Bankruptcy Court was correct in holding that the Tax Sale Statute creates an unreasonable risk of erroneous deprivation of Pontes' right of redemption.

### 3. The Government's Interest

The *Mathews* balancing test also requires this Court to consider the burden that providing notice of the right of redemption would place on the City. Specifically, this Court must consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335, 96 S.Ct. 893.

The Bankruptcy Court held that this factor easily weighed in favor of the Debtor. This Court agrees. While there is no question that the City has a substantial interest in ensuring the timely collection of its property taxes,[11] in this case, however,

---

**10.** The Appellants contend that the Bankruptcy Court should have looked to decisions in the tax sale context from other jurisdictions when conducting its due process analysis. *See Weigner v. City of New York*, 852 F.2d 646 (2d Cir.1988); *Farbotko v. Clinton County, New York*, 168 F.Supp.2d 31 (N.D.N.Y.2001). However, *Weigner* and *Farbotko* do not support the Appellants' argument. While *Weigner* did involve a challenge to a tax foreclosure notice, the challenge in that case revolved around the taxpayer's failure to receive the notice, not the content of the notice. Furthermore, the tax sale notice in *Weigner* apprised the taxpayer of the right to redeem the prop-

erty and the length of time available to exercise the right. 852 F.2d at 648. *Farbotko* also involved a challenge to a tax sale scheme. However, the principal challenges raised in *Farbotko* did not involve actual notice of the right of redemption. In fact, the statutory scheme at issue in *Farbotko* provided notice of the right of redemption in the tax sale notice and by publication. These decisions therefore have no bearing on the matter before the Court.

**11.** Indeed, property taxes are the primary source of revenues controlled by local governments. Accordingly, the City's interest in col-

the greater interest clearly weighs in favor of the taxpayer. Providing earlier notice of the right of redemption will have little effect on the City's ability to collect its property taxes. Regardless of whether the taxpayer decides to redeem his or her property, the City still collects its revenue—from a tax sale purchaser if there is no redemption, or from a property owner in the event of a redemption. Moreover, the City can easily modify the current Tax Sale Statute to provide for notice of the right of redemption. The Tax Sale Statute already provides for notice of the impending tax sale, and advisory language regarding the right of redemption could, without any difficulty, be included in that notice. As the Bankruptcy Court explained, "[n]ot even additional postage would be required." 280 B.R. at 34.[12]

## IV. *Conclusion*

For the reasons set forth above, the Order of the Bankruptcy Court is AFFIRMED.

IT IS SO ORDERED.

---

lecting delinquent property taxes is a significant one. *See generally* Frank S. Alexander, *Tax Liens, Tax Sales, and Due Process*, 75 Ind. L.J. 747, 748 (2000) (providing a detailed discussion of property tax collection schemes and due process).

12. The ease with which the City could have provided Pontes with notice of the right of redemption is evidenced by the General Assembly's amendment to R.I. Gen. Laws § 44–9–9, entitled "Notice and Advertisement of Sale," which added the following language:

"Any notice of sale shall inform any party entitled to notice of its right of redemption and shall explain to such party the manner in which said right shall be exercised and inform said party of the penalties and forfeiture that may occur if the right of redemption is not exercised." It is not clear on the face of the amendment whether this language applies only to advertisements or all notices sent under the statute. This amendment to the Tax Sale Statute was not in effect at the time Pontes' property was sold at tax sale.